FILED

MAR 1 8 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| CHRISTOPHER SEAN BAKER | ) | CASE No. 1:21 CV 623 |
| Plaintiff  (Pro Se) | ) | |
| | ) | JUDGE:  JUDGE POLSTER |
| VS. | ) | |
| | ) | |
| BRYANT & STRATTON COLLEGE | ) | **COMPLAINT:** |
| Defendant | | Breach of Contract |

Christopher Sean Baker, of 55 Barrett Rd. Apt.505, Berea, Ohio 44017.

VS.

Bryant and Stratton College, of 12955 Snow Rd., Parma, Ohio 44130.

and 35350 Curtis Blvd., Eastlake, Ohio 44095.

Christopher Sean Baker, Pro'Se Plaintiff (student, Baker), brings this complaint against Bryant & Stratton College (Defendant, BSC, college, school).

I. This Court Has Jurisdiction based on

A. Americans with Disabilities Act, section 504 (ada.gov) which states, *"no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or*

1

1  *be subjected to discrimination under" any program or activity that either receives Federal*

2  *financial assistance or is conducted by any Executive agency or the United States.*[1]

3  As written ADA/504 has no statute of limitations. As such, ADA/504 violations must be rooted in

4  supporting law.

5

6         B.   The Ohio Revised Code 2305.06 (Supporting law) states,

7         *"An action upon a specialty or an agreement, contract, or promise in writing shall be*

8  *brought within eight years after the cause of action accrued"*. The letter of written agreement (The

9  Contract) between Baker and Bryant & Stratton is dated May 6, 2015 and would not exceed the

10  law until 2023. At the very least ORC 2305.06, recognizes the legal validity of verbal agreements

11  which carries a six-year statute of limitations. However, the letter of May 6, 2015 is more than a

12  verbal agreement.

13         C. Compensatory damages in tort action

14         O.R.C. 2315.18, states *(4) "Noneconomic loss: means nonpecuniary harm that results from*

15  *an injury or loss to person or property that is a subject of a tort action, including, but not limited*

16  *to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention,*

17  *protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental*

18  *anguish, and any other intangible loss."*

19         D.   The Continuing Violations Theory

20         This theory eliminates the need to burden the court with separate actions against the same

21  defendant regarding repeated or similar violations within a limited time between the same two

---

[1] U.S. Department of Justice, Civil Rights Division, A "Guide to Disability Rights Laws, July 2009, states *"To be protected by the ADA/504, one must have a disability or have a relationship or association with an individual with a disability. An individual with a disability is defined by the ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment. The ADA does not specifically name all of the impairments that are covered."*

1  parties. Allowing multiple violations to be grouped as one. Regarding the statute of limitations,

2  some violations may fall outside the statutory period. However, provided that "some act" (breach

3  of contract) contributing to the claim occurs within the filing period. The entire time period may

4  be considered by a court for the purposes of determining liability [defined in 42 U.S.C. § 2000e-

5  5(e)]. Plaintiff asserts, the letter of grievance filed on May 5, 2015 (winter semester January -

6  April) and letter of May 6, 2015 for the spring semester (May – August) are linked. One would

7  not exist without the other.

8  Therefore, plaintiff does not need to bring four separate actions against the defendant. A

9  case for each class in the winter semester 2015, and a case for each class in the spring semester

10  2015. Accusations are based on similar consecutive violations between the same two parties.

11  Happening between January and August of 2015.  Therefore, Plaintiff asserts that this complaint

12  is best served by the continuing violations theory, not the initial discovery of a single violation.

13

14  II. The Complaint

15  Defendant failed their written student policy regarding the Americans with Disabilities Act

16  (ADA)/504 in the winter semester of 2015 by not honoring plaintiff's doctor request for testing

17  accommodations [2]. This disregard caused Baker to fail both classes of winter 2015 prompting

18  Baker to file a formal letter of grievance on May 5, 2015 stating that the school failed to abide by

19  their statement of ADA accommodation. The following spring semester, defendant willingly

20  violated a written contract agreement of May 6, 2015 for testing accommodations.

---

[2] U.S. Department of Justice, Civil Rights Division, A "Guide to Disability Rights Laws, July 2009. 104.44 Academic Adjustments (a)Academic requirements" *Modifications may include changes in the length of time permitted for the completion of degree requirements* [time and a half for testing]*, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted."*

1    Accommodations were in accordance with the American with Disabilities Act and Ohio's contract

2    law. Over the spring semester BSC's persistent and extreme violations of the testing agreement

3    resulted in a hostile environment where plaintiff become unable to comply with the college's

4    academic requirements resulting in him failing the same two classes again. The college then used

5    these faulty test results as basis to expel him from their nursing program on August 20, 2015. This

6    resulted in the financial loss of an entire year and a half plaintiff spent in defendant's nursing

7    program, a loss far greater than the failed semester in question. These actions violated the

8    ADA/504 and under Ohio law constitute a breach of contract.

9

10   III. Cause for Action

11       A.  Allegation - Defendant had Foreknowledge of Plaintiff's Medical Needs

12       Baker tested positive for amphetamines entering the nursing program (Evidence 1, pgs. 17-

13       19). Therefore, defendant required the Plaintiff's physician to write a statement of

14       treatment[3] (Evidence 2, pgs. 20-21) making known plaintiff was taking 25mg of Adderall

15       (amphetamine) daily to treat Attention Deficit Disorder (ADD, neurological condition).

16       While on the amphetamine plaintiff was able to maintain a high academic standard

17       (Evidence 3, pg. 22).  However, plaintiff lost his job with health insurance and prescription

18       coverage. Therefore, Dr. Kovacevic, Baker's Primary Physician, twice requested the

19       college provide testing accommodations for Mr. Baker (Evidence 4a & 4b, pgs. 23-24).

---

[3] U.S. Department of Education, Subpart A, General Provision, 104.3 Definitions:

    (i) "Physical or mental impairment *means (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.*"

B.  Allegation - Defendant Failed Their Stated ADA/504 Policy, Winter 2015

As defendant was unable or willing to comply with their own student handbook (Evidence 5, pgs. 25-26). Defendant's inaction and policy confusion (Evidence 6a & 6b, pgs. 27) caused Baker to fail both classes and likely be removed from the nursing program. Therefore, plaintiff filed a formal grievance (Evidence 7, pgs. 28-32) on May 5, 2015. Citing the Americans with Disabilities Act/504 and the defendant's failure to follow their own policy. As a result, on May 6, 2015 the college provided a written agreed for academic testing accommodations. If Baker was willing to repeat the two failed classes (Medical/Surgery I and Pharmacology for Nurses) in the spring semester, defendant's written offer shows culpability on their part.


C. Assertion, of Contract, Agreement, Specialty, or Promise.

The letter of May 6, 2015 (Evidence 8, pgs. 33-34) is a valid legal contract (agreement, arrangement, commitment, pledge, promise, etc..) for multiple reasons: first, the letter states specific services for payment between two parties, services Bryant & Stratton College was to provide in Baker's nurse training. The letter specifically describing where, when, and how testing was to be done for plaintiff. Secondly, the defendant had consideration and capacity to make good on their offer. The Academic Services Department had a specific isolated testing room without windows and a posted sign outside the door read "Testing Room, quiet please" (Evidence 9, pgs. 35). Thirdly, these academic accommodations would be in effect for the next year, or until plaintiff graduated (early summer or late fall of 2016). According to ADA law, accommodations are considered indefinite once initiated so long as Baker felt a benefit. Fourth, in return plaintiff would

continue his studies abiding by college's policies and class syllabus. Payment is the final reason the agreement of May 6, 2015 is a contract. The college did not refund plaintiff for the wrong done in the winter semester of 2015. Therefore, mutual assent was that defendant would apply Baker's paid tuition from the failed winter semester to the same two classes in the spring semester of 2015. The word "free" should not be misconstrued to mean the two classes (Med/Surg I and Pharmacology for Nurses) were offered without expense to plaintiff. Under these conditions and understanding, Baker agreed to the written offer signed by Bryant & Stratton's ADA Coordinator Marilyn Huber.

Precedent for breach of contract claim in Ohio has four elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the existence of damages. (Pavlovich v. Nat'l City Bank, 435 F.3d 560, 565 (6th Cir. 2006)). Therefore, the letter of May 6, 2015, is a legally written agreement or contract. At the very least, it is a written verbal agreement. Also legally binding under Ohio's law (O.R.C. 2305.07) with statute of limitations effective until May 6, 2021.

D. Allegation, that Defendant Failed to Abide by the May 6, 2015 Agreement, spring 2015.

Instead of complying with the written accommodations, defendant made things much worse for Plaintiff in the spring semester of 2015. Listed are three examples of the conditions in which teachers and staff violated the May 6th written agreement:

1. Instead of "*permitted to take all tests in a quiet room*" plaintiff was forced to take math medication tests directly above active construction (Evidence 10, pg. 36). When Baker asked about the much quieter "Testing Room" in the academic center.

Ms. Knight (Instructor for Medical/ Surgical for Nurses I, both semesters in question) stated, "that was out of the question"; "I was told I have to keep my eye on you". She insisted the only rooms available and close to her class were the ones directly above a remodeling project.

Therefore, plaintiff was required to take two math medication calculation tests directly above active construction with hammering, drilling, pounding, and a radio blasting directly below[4]. Construction was intense, plaintiff remembers watching a spare pencil vibrate across his table until it fell off. A newsletter of February 9, 2015 from the Dean of Students Jason R. Mullin (Evidence 11, pg. 37) stated that there would be construction soon and things might be "*a tad noisier than normal*". For this reason, no classes were scheduled above the construction during the day. Despite plaintiff's verbal and written protests (Evidence 12, pgs. 39-42) the stated accommodations of May 6, 2015 never happened. The court should know that plaintiff passed this same test in the winter semester on the first try with a 94% (Evidence 13, pgs. 43-45). However, Baker now failed this same test three times causing a class failure within the first three weeks of the repeated semester.

The importance of a quiet testing room can be seen in Mrs. Siragusa's e-mail of April 8, 2015 (Evidence 14, pg. 46) when she stopped plaintiff in the middle

---

[4] U.S. Department of Justice, Civil Rights Division, A "Guide to Disability Rights Laws, July 2009, (c) Course Examinations *"In its course examinations or other procedures for evaluating students' academic achievement, a recipient to which "In its course examinations or other procedures for evaluating students' academic achievement, a recipient to which this subpart applies shall provide such methods* [a quiet room for testing] *for evaluating the achievement of students who have a handicap that impairs sensory* [Attention Deficit Disorder]*, manual, or speaking skills as will best ensure that the results of the evaluation represents the student's achievement in the course, rather than reflecting the student's impaired sensory, manual, or speaking skills (except where such skills are the factors that the test purports to measure)."*

of a creative song (a group project) about aspirin. She writes, *"I am sure that you can understand and appreciate the other instructor coming to our door on behalf of her class as they were testing"*. Further evidence can be seen in the U.S. healthcare laws requiring hospitals to show great effort is taken in making designated medication calculation rooms (Med rooms) sound resistant and isolated (Evidence 15, pgs. 47-48). These specifically built rooms are where real nurses can assemble actual patient medications to administer.  The college even teaches that "best clinical practice" is that when someone is in a "med room" (performing a medication calculation) you do not disturb them. It is obvious, the defendant could freely accommodate other students. However, would not honor the contract or provide the same for plaintiff.

2. Instead of *"Instructors will be instructed to make all testing arrangements with the Academic Department"*. Plaintiff understood the contract to mean that all test taking actions, the process, plans, preparations were to be made with and through the academic department. It was within the "Academic Department" there was a "Testing Room" and the office of Marilyn Hubert, the campus ADA coordinator. However, it became clear through conversation and the defendant's actions that things changed. Now, all testing arrangements would instead go through Mrs. Siragusa (Assistant Director of Nursing) and her office.

3. Plaintiff was frustrated with changes from the written agreement and made known the disparity between testing in staff offices and the quiet testing room in the

1  academic department. Mrs. Siragusa said, "the testing room was off limits because

2  it had no security cameras to watch plaintiff. However, Academic Administrative

3  Assistant, Irene A. Demchuk's was stationed directly across from the Test Room.

4  There was also a small window in the testing room door allowed students to be

5  viewed while testing. The "Testing Room" was not out of service or off limits to

6  other students in different programs at BSC. However, it was made clear that all of

7  plaintiff's tests would now have to be given in Siragusa's or Kelly Mudros

8  (Assistant to the Director of Nursing) personal office.

9
10  In the private staff offices plaintiff had to test face to face and knee to knee

11  for direct observation. Both offices had a floor to ceiling glass wall that faced the

12  main entrance to the college. The main road had cars pulling in and out, people

13  walking and talking directly outside, lawn care crews mowing and landscaping

14  close to the building. All were a constant distraction to plaintiff's testing (Evidence

15  16, pg. 49). Therefore, Baker asked Siragusa if someone could sit and watch him

16  in the quiet testing room rather than staff offices. She insisted that they did not have

17  anyone, "who could do nothing but just sit and watch" while Baker took tests. The

18  agreement that was meant to help was now used to hurt, exclude, and discriminate

19  against plaintiff, exacerbating plaintiff's personal and academic learning

20  difficulties.

21

22  E.  Allegation, that Defendant Intent to Defraud Plaintiff.

23  On the evening of May 27, 2015 there was written correspondence between Ms.

24  Knight (instructor of Med/Surg I) and plaintiff (Evidence 17, pgs. 50-52) regarding

Baker's third and final attempt of the medications test. Soon after arriving at Mary Mount hospital the next day, Knight informed plaintiff they needed to talk privately. Once alone, she explained that the third and final attempt at the math med calculations test is always graded by three instructors. No one teacher wants sole responsibility of deciding that a student failed out. She stated, "the first instructor and I graded your test and came to different conclusions". She (Ms. Knight) thought that Baker had missed three (failure). The second instructor (unknown) thought Baker had only missed two (passing). They explained their reasoning to Mrs. Siragusa and await her tie breaking decision. Knight explained, they were both shocked and stunned when Siragusa said, "he missed eleven". Explaining that her issue was not with plaintiff sighting the required five rights of medication or his calculations but rather the way he had written his answers. He had not used the transcription method. Knight stated, they were unaware that transcription was cause for an incorrect answer. Such a requirement was not made of other students or used in other classes. Ms. Knight ended the conversation by saying, "you (Baker) are right, there are bigger issues here." This was the basis of plaintiff failing the repeated Med/Surg I class, spring semester 2015.

A couple of days later plaintiff called Mrs. Siragusa to contest the results of the med test pointing out the May 6, 2015 contract for testing accommodations were not followed. Plaintiff made no mention of the private conversation he and Knight had. Siragusa responded, "the other instructors and I felt that you missed too many and that even with the accommodations you (Baker) still would have failed." This showed a clear intent to deceive.

1       It was about six weeks into the spring semester when plaintiff went to his other

2   teacher, Miss Betty Lou Keaton. The new class instructor for "Pharmacology for

3   Nurses" (spring semester of 2015). He explains his recent failure to pass the medication

4   calculation test meant automatic failure in his Med/Surg I class. Plaintiff had been one

5   of fourteen students (14 out of 18) that had failed a class a year prior. BSC policy states

6   that any student nurse failing two classes will not be allowed to enroll in subsequent

7   semesters. That student should expect to be expelled from the nursing program.

8   Therefore, plaintiff told Ms. Keaton that there was no purpose in continuing in her

9   class. Ms. Keaton immediately took Baker aside to a private place. There she made

10  plaintiff aware of the defendant's intention to not abide by the contract agreement for

11  testing accommodations. It was thought plaintiff would fail his medications test and

12  knowing that dismissal was imminent, he would get frustrated (mental anguish) and

13  just walk away, giving up on the pharmacology class too. Keaton explained that by

14  doing this, the second failed class would be seen as plaintiff's own fault. The reason

15  for dismissal justified. Therefore, Keaton told Baker, "you show up every day and take

16  every test in my class"; "don't give them the satisfaction." These three events show a

17  clear intent of the Bryant & Stratton College to defraud plaintiff of needed

18  accommodations and his paid tuition.

19

20  IV. Consequences of Defendant's Actions

21      Bryant & Stratton College was again unwilling to comply with their own written policy

22  for ADA accommodations. Therefore, plaintiff again failed both Med/Sur I and Pharmacology for

23  nursing. Defendant then used results from known testing violations as grounds to expelled plaintiff

1   from their nursing program on August 20, 2015 (Evidence 18, pgs. 53-55). BSC's failure to

2   perform to the written agreement of May 6, 2015 violates Ohio law (O.R.C. 2305.06). Causing

3   plaintiff monetary damages much greater than the one repeated semester in question; because

4   defendant threw out every semester plaintiff invested in their nursing program. May the Court

5   recognize the complaint has factual substance offering strong exhibits in support of the allegations.

6   Offering more than a threadbare recital of the elements of a breach of contract claim.

7

8   V. Closing

9       Plaintiff requests the court to recognizing the defendants breach of ADA/504 policy for

10   two classes in the Winter Semester (January – April) of 2015. For a total not less than ten weekly

11   tests, a Mid-term and a final exam taken in Med/Surg I. Along with a minimum of eleven weekly

12   tests, a Mid-term and a Final exam taken in Pharmacology for Nursing and fifteen weekly tests.

13   For at least twenty-eight tests in the winter semester of 2015.

14       May the court also recognize violations against the written contract for testing

15   accommodations, Spring Semester (May – August) 2015 to include one weekly test and three math

16   medication calculation tests in Med/Surg I along with a minimum of 15 weekly chapter tests, Mid-

17   term, and Final exam in Pharmacology for Nurses (lab class tests omitted). Altogether, plaintiff

18   was subject to not less than fifty-one gross violations of ADA/504, and BSC's contract for testing

19   accommodations. These violations took place week after week for nearly six months. Plaintiff

20   hopes, the court recognize "initial discovery method of violations" (one-time, single event) does

21   not best serve the complaint.

22       May the court recognize the legal merit of this complaint for Baker's medical condition.

23   His life-long struggle and need of intermittent treatment or testing accommodations and granting

favorable judgment in light of patient history and future treatment. Legal action being rooted in O.R.C. 2305.06 that Bryant & Stratton College:

    1.  failed their stated responsibility to the "Americans with Disabilities Act" and student policy which caused plaintiff to fail both classes in the winter of 2015.

    2. Entered into a specialty, agreement, contract, or promise in writing on May 6, 2015.

    3. Failed to follow the written agreement. Instead, defendant sought to exacerbate plaintiff's academic difficulties by excluding and denying plaintiff access to needed facilities.

    4. sought to defraud plaintiff of all paid tuition, professional opportunities, and his rights under ADA law.

## VI. Prayer for Relief

    A.  Real Damages of $47,900.12

        1. Student loans for tuition - $45,225.00

        Plaintiff is asking for full reimbursement of all nursing classes, not just the semester in question, for having been wrongfully dismissed from Bryant & Stratton college for "academic failure". Two-year nursing programs vary in accreditation and clinical labs do not transfer. Students in nursing programs are made aware that once in a nursing program all effort should be made to complete that program. Transferring to another program or school is very unlikely. Therefore, plaintiff is seeking full tuition reimbursement.

        2.  Defendant required plaintiff to travel: $2,675.12

13

1           To be successful in the nursing program defendant required in class and

2           clinical site attendance (Nursing Program Student Handbook, Winter 2014, pg.

3           15, (a).

4           Plaintiff started the nursing program winter semester (January 14, 2014) and

5           was removed the end of summer semester (August 20, 2015) averaging three

6           on campus class days a week, in a fourteen-week semester. The round trip to

7           campus and back home was about thirteen miles for six semesters. Average

8           travel to and from clinical site - Greenbrier Healthcare Center in the fall of 2014

9           was 17.6 miles per clinical for eight weeks. Winter and Summer Semester 2015

10          - clinical site travel was 36 miles to and from Marymount hospital for thirteen

11          weeks. This request is based on the milage maintenance and gasoline expenses

12          allowed by the Internal Revenue Service for the stated years.

13

14   B. Special or compensatory Damages of $143,700.36

15           Though not common, compensatory damages are not prohibited in breach of

16          contract action. Therefore, plaintiff requests the court to consider Ohio Revised Code

17          2315.18, A (4) which specifically sights such damages as, *"instruction, training, or*

18          *education, disfigurement, mental anguish, and any other intangible loss."* It also

19          includes damage to plaintiff's financial well-being and professional opportunities. This

20          law also states, in subsection (2). *"The amount of compensatory damages that*

21          *represents damages for noneconomic loss shall not exceed the greater of two hundred*

22          *fifty thousand dollars or an amount that is equal to three times the economic loss."* It

23          is hoped that the court recognize awarding only the "real damages" would neglect the

full scope of damage caused to Baker falling short in helping make plaintiff whole again. May the court also note the preferred treatment, amphetamines, is clinically proven to be progressively treatment resistant. The more that it is used, the less they work requiring a higher and higher dose to achieve effective results. Therefore, plaintiff requests the full judgment amount to aid plaintiff as other medical treatments are needed or discovered.

C. Total Requests

Should the defendant be found guilty of non-compliance to the U.S. Americans with Disabilities Act/504, and in violation of Ohio's breach contract law and sighting the defendants May 6, 2015 contract for testing accommodations. Plaintiff prays the court recognize the real and special damages totaling not less than $191,600.48. Plus, whatever other benefit the Court should see fit.

Respectively Requested:

Christopher S. Baker

Christopher S Baker, Pro'Se

55 Barrett Rd, Apt 505

Berea, Ohio 44017

440-472-9764

Csbphoenix77@gmail.com

1       I, Christopher Sean Baker, declare under penalty of perjury under the law

2  of the State of Ohio that the foregoing is true and correct. Dated the 3rd day of

3  March 2021.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23